UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZOLTAN KRISKO )
) Index No.:
Plaintiff, )
)
v. ) **COMPLAINT**
) **AND DEMAND**
) **FOR JURY TRIAL**
)
Marvel Entertainment, LLC, ) 19CV9256
a Delaware limited liability company, and )
Warner Chappell Music, Inc., )
a Delaware corporation, and )
The Walt Disney Company, )
a Delaware corporation, and )
Fox Corporation, )
a Delaware corporation, and )
Buena Vista Television, LLC )
a California limited liability company, and )
UMG Recordings Inc., )
a Delaware corporation, and )
Amazon.com, Inc., )
a Delaware corporation, and )
Apple, Inc., )
a California corporation, and )
Ronald Aaron Wasserman and )
Shuki Levy and )
Haim Saban )
)
Defendants. )
)

---

## COMPLAINT

Plaintiff, Zoltan Krisko, *Pro Se*, brings this action against Defendants, Marvel Entertainment, LLC ("Marvel"[1]), a Delaware limited liability company, and Warner Chappell Music, Inc. ("Chappell"), a Delaware corporation, and The Walt Disney Company ("Disney"), a Delaware corporation, and Fox Corporation ("Fox"), a Delaware

---

[1] Marvel will also be used to refer to all of the limited liability company's business predecessors.

1

corporation, and Buena Vista Television, LLC ("BVT"), a California limited liability company, and UMG Recordings Inc. ("UMG"), a Delaware corporation, and Amazon.com, Inc. ("Amazon"), a Delaware corporation, and Apple, Inc. ("Apple"), a California corporation, and Ronald Aaron Wasserman ("Wasserman") and Shuki Levy ("Levy") and Haim Saban ("Saban")(collectively "Defendants")[2], and in support thereof, states as follows:

## NATURE OF ACTION, JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C. §101 *et seq.*).

2. This Court has jurisdiction under 17 U.S.C. §101 *et seq.*, and 28 U.S.C. §1331 (federal question), and 28 U.S.C. §1338(a) (copyright infringement).

3. This Court has personal jurisdiction over Defendants because the principal place of business of Marvel and Fox is in the Southern District of New York. Defendants also are doing business in the State of New York and in this judicial district, and acts of infringement complained of herein occurred in the State of New York. Any of the Defendants who may claim to have no ties to the state of New York and this judicial district as per the above are properly joined under Fed. R. Civ. P.20(a)(2).

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events that gave rise to this Complaint occurred in this district, and each Defendant either resides in this district or has substantial and continuous ties to this district.

---

[2] All business predecessors of any and all of Defendants shall also be referred to under the respective Defendant entity.

## PARTIES

5. Plaintiff is a resident of Fort Lauderdale, Florida. Mr. Krisko is the individual entrusted with the role of nurturing the memory of the late Mr. Vukan. By will, among others, he is the copyright owner of the theme song of Linda, a Hungarian TV series from the 1980s.

6. Defendant, Marvel is a Delaware limited liability company, which is based in New York. Marvel is an American entertainment company founded in June 1998, formed by the merger of Marvel Entertainment Group, Inc. and ToyBiz.

7. Defendant Chappell is a Delaware corporation, which is based in California, and has an office New York. Chappell is an American music publishing company and a division of the Warner Music Group. It is currently the registered copyright claimant of the X-Men: The Animated Series theme song.

8. Defendant Disney is a Delaware corporation, which is based California, and has an office in New York. Disney is the successor of New World Pictures, the successor of Genesis Entertainment, the production company of X-Men: The Animated Series.

9. Defendant Fox is a Delaware corporation, which is based in New York. It is the successor of Fox Network and Fox Kids Network original airing distribution companies of the X-Men: The Animated Series.

10. Defendant BVT is a California limited liability company, which is based in California and has an office in New York. BVT operates under the name Disney–ABC Domestic Television and Disney–ABC Home Entertainment and Television Distribution. It is the successor of Saban Entertainment production and world-wide distribution company of all the X-Men: The Animated Series related media.

11. Defendant UMG is a Delaware corporation, with corporate headquarters in California and an office in New York. It is the successor of PolyGram Video DVD distributor the X-Men: The Animated Series.

12. Defendant Amazon is a Delaware corporation, which is based in Washington, and has an office in New York. Amazon is the online sales distributor of the X-Men: The Animated Series.

13. Defendant Apple is a California corporation with business offices in New York. Apple is the owner and operator of iTunes, an online sales distributor of the X-Men: The Animated Series.

14. Defendant Wasserman is an individual who lives in California.

15. Defendant Levy is an individual who lives in California.

16. Defendant Saban is an individual who lives in California.

## GENERAL ALLEGATIONS

17. Before the fall of Communism, in the 1980s, one of the most popular TV series in Hungary was called *Linda*. The comedy thriller, with a total of 17 episodes, was aired in Hungary between 1984 and 1991. Linda was the epitome of Hungarian filmmaking in the 1980s. Its soundtrack was written by Gyorgy Vukan, a famous Hungarian composer and pianist, recipient of numerous state and international awards.[3] Mr. Vukan composed over 150 film scores.

18. The Linda series was a household name in Hungary and an entire country could identify the series through its iconic soundtrack, which was registered in Hungary in 1983, and which has also been registered with the Copyright Office in the United States since 2017. (Exhibit 1)

---

[3] https://www.youtube.com/watch?v=O1Saml21Dto

19. During the 1980s, cooperation between film industry professionals from different countries, including from the "Eastern" and "Western" world, existed despite the still standing Iron Curtain. Based on information and belief, as professionals in the animation film industry, Defendants Ronald Wasserman, Haim Saban and Shuki Levy all came in contact with Hungarian professionals in the film industry, and were aware of the famous animation workshop at Pannonia Filmstudio in Hungary, where Hungarian film industry professionals, such as Gyorgy Vukan, were frequent visitors.

20. Defendant Ron Wasserman was an employee at Saban Entertainment, Inc. in the early 1990s. Saban Entertainment was founded by Defendant Shuki Levy, a composer and Haim Saban, a businessman. Wasserman holds himself out to be the composer of the opening theme of the animation series X-Men.

21. Defendant Shuki Levy is a former owner of Saban Entertainment, who holds himself out to have composed the opening theme of the animation series X-Men. In a 1998 investigation by *The Hollywood Reporter*, it was revealed that many of "his" compositions were ghostwritten by other composers, in order for Levy and Saban to gain control of all publishing rights and music royalty revenue.

22. Haim Saban is a former owner of Saban Entertainment, who, based on publicly available records, has held himself out in the past to be the copyright owner of the opening theme song of the animation series X-Men.

23. In the 80's, besides the Walt Disney Studios (USA), the Hanna-Barbera Studios (USA), Soyuzmultfilm (Soviet Union), Toei Animation (Japan), the Hungarian Pannonia Studio was ranked among the top 5 animation studios globally.

24. A subsidiary of Marvel Entertainment Group launched in 1989 an animated television pilot called *The Pryde of the X-Men*. The series that this episode was intended to launch never materialized, the pilot was a failure. Marvel had to go back to the drawing board to set up the launch of the animation series *X-Men* in 1992.

25. Marvel kept most characters, but changed the soundtrack of the pilot animation, including its opening theme song. The music for X-Men in 1992 was provided by Saban Entertainment. The animation series X-Men became a huge success, over the next several years, between 1992 and 1997. In total, 76 episodes were created and released.

26. The soundtrack of X-Men is widely regarded as the most iconic soundtrack of any animation series in the 1990s.[4]

27. X-Men used the same theme song in all 76 of its episodes between 1992 and 1997. The theme song, which is the subject of the copyright infringement, is used in every episode during the opening, closing and the most critical parts.

28. The iconic theme song of X-Men is substantially similar to the theme song of Linda.[5] It was the result of unauthorized copying of Vukan's copyrighted work, with some minor alterations, which is a copyright infringement under the Copyright Act §§106 and 501. The infringement is clear to even the layperson after listening to the theme song of Linda (from 1984 to 1991) and the theme song of X-Men (from 1992 to 1997). The subject, the tempo, (pace), the harmonization and the sounding (instrumentation) is identical. The key of the two works is identical: C minor. The tempo is identical: about 124 BPM. Harmonization is the same regarding the subject: Vukan sounds a C minor harmony based on grade 1 of the basic key, and so does the infringing theme song of X-Men. When

---

[4] https://www.youtube.com/watch?v=sAkL2-vh2Sk
[5] The fact that the primary melodic theme of X-Men is "substantially similar" to that of Linda was confirmed by both the Hungarian Council of Copyright Experts and also Judith Finell, musicologist in the United States.

the infringing work repeats the subject on the IV$^{th}$ grade, then the harmony is also IV$^{th}$ grade (F minor). Both works use a synthesizer with rhythm accompaniment.

29.   The soundtrack of X-Men contributed in a substantial manner to the business success of the X-Men. It has been described by others as "the one thing fans can agree on is that the show's theme is one of the greatest animated themes ever created. Once you hear the theme it's impossible to forget it."[6]

30.   In 2017, Defendant Marvel used the infringing theme song to promote its new X-Men episodes and related products under the marketing name of X-Men Ressurxion.[7] Notably, Marvel launched its promotion using the old theme song of X-Men, which is subject of this infringement action, further highlighting the importance of the theme song in the success and marketability of the X-Men brand. The promotion and sale of X-Men Ressurxion using Plaintiff's copyrighted theme song is another example of the fact that the infringement of Plaintiff's copyright dating back to 1983 is an ongoing problem even today.

31.   The main theme of the X-Men animation series, which is played 4 times in every episode, is a result of a direct and intentional copyright breach by Defendants. Specifically, the animation series' theme song from 1992 is a result of an unauthorized copying of the heart of the copyrighted work and subsequent distribution of the theme song of the Linda Hungarian TV series.

---

[6] https://www.syfy.com/syfywire/stuff-we-love-the-opening-theme-to-x-men-the-animated-series
[7] https://www.youtube.com/watch?v=tUB0osYVJiY

32. Defendants Wasserman, Shuki, Saban and Marvel[8] all at some time in the past claimed copyright ownership or credit for the creation of the theme song for the animation series X-Men.

33. Currently, Defendant Chappell claims copyright ownership of the X-Men opening theme, which in reality infringes on the copyright of Plaintiff, since Mr. Vukan's work was copied in large part and used without his or subsequently Plaintiff's knowledge or consent for many years.

34. X-Men animation series episodes using the copyrighted theme song of Plaintiff were distributed through television channels over the years by Defendants Disney, BVT and Fox and released through VHS and DVDs by UMG[9] and Disney's subsidiary, Buena Vista Home Entertainment, Inc. All these acts were done without the copyright owner's knowledge or consent, resulting in copyright infringement of Mr. Vukan's original work.

35. X-Men animation series episodes using the copyrighted theme song of Plaintiff are presently distributed on media players, such as iTunes and Amazon by Defendants Apple and Amazon. All these acts were and are presently done without the copyright owner's knowledge or consent, resulting in copyright infringement of Mr. Vukan's original work.

36. X-Men themed merchandise has been advertised with the infringed theme song and is sold for profit by Defendants to this day. Defendant Marvel, through predecessor ToyBiz, is the most well-known seller of X-Men action figures.

---

[8] Marvel is the successor to Marvel Entertainment Group, Inc., which entity initially registered copyright to the X-Men opening theme in 1994.
[9] UMG acquired PolyGram, the company which released certain episodes of X-Men between 2000 and 2010.

37. X-Men through its animation series became an international hit among both young and older generations and paved the way for the success of X-Men film series released between 2000 and 2019, starting with X-Men and ending with Dark Phoenix. An analyst, Mike Fugere described this phenomenon well: "Where the cartoon left its impression is on the crowds that attended those screenings that summer. For every audience member who bought a ticket for X-Men because they love the comics, there was one who was attending because they had fond memories of the animated series. The power of nostalgia (even if it's for a time not far from memory) is strong. Not only did 2000's *X-Men* spark Fox's ongoing X-Men film franchise, it was at the forefront of the current superhero movie boom that still dominates box offices worldwide."[10] Clearly, "X-Men", through the success of the animation series, became a brand that continues to sell old and new products very well. The infringed copyrighted work is, in part, responsible for this financial success.

38. While Ron Wasserman was proclaimed the "composer" of the soundtrack of X-Men the animation series, the copyrights were initially owned by Saban Entertainment.

39. Levy, former co-owner of Saban Enterprises, also held himself out as the creator of the X-Men theme song.[11]

40. Saban, co-owner of Saban Enterprises, held himself out as the initial owner of the copyright of the X-Men theme song.

41. Saban Entertainment sold the rights to the opening theme and soundtrack of X-Men to Marvel Enterprises for an unknown amount.

---

[10] https://www.cbr.com/x-men-animated-series-changed-everything-25th-anniversary/
[11] http://shukilevy.com/themes-and-scores/

42. Marvel Enterprises subsequently sold the rights to the opening theme and soundtrack of X-Men to Warner/Chappell for an unknown amount.

43. Over the years, Saban Entertainment, Marvel Enterprises and Warner/Chappell profited substantially from the stolen work of a Hungarian individual, Gyorgy Vukan.

44. Mr. Vukan did not authorize in any way any of the Defendants to use his music, to create a derivative work from it, or distribute any products using his copyrighted work. Mr. Vukan or the Plainitff did not receive any financial compensation for the infringing use by any of the Defendants of the copyrighted theme song.

45. The Hungarian copyrighted work was original and had proven to have a catchy theme song. It was the "ideal" target for theft, having been composed behind the Iron Curtain. Not only were persons from Communist countries limited for decades in their ability to travel to Western countries, such as the United States, they had limited access to films from the West. The lack of internet at the time made discovery of the infringement despite the substantial similarity between the two works considerably less likely.

46. In 2013, Gyorgy Vukan passed away. His estate passed through a will, leaving the copyright in his works to Zoltan Krisko, Plaintiff in the present action. In 2017, Plaintiff became aware that X-Men's theme song is an infringement of Linda's copyrighted theme song.

47. Plaintiff registered the copyrighted work effective January 26, 2017.

### FIRST CLAIM FOR RELIEF

48. Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 47.

49. Plaintiff is the sole owner of the copyright in an original work that is fixed in a tangible media of expression.

50. The above described conduct by Defendants constitutes copyright infringement under the Copyright Act. Each infringement by Defendants of Plaintiff's protected copyrighted work creates an independent act of infringement.

51. As a result of the above described conduct by Defendants, Plaintiff has been damaged in an amount to be proven at trial.

52. In the alternative, the Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504.

53. Pursuant to 17 U.S.C. §505, the Plaintiff is entitled to recover its full costs and reasonable attorney's fees.

54. As a direct and proximate result of the Defendants' actions, the Plaintiff has sustained and will continue to sustain immediate, substantial and irreparable injury, for which there is no adequate remedy at law. Based on the blatantly committed infringement by Defendants, and the vastly superior resources available to Defendants, unless this Court enjoins their actions, the Defendants will continue to infringe upon the Plaintiff's valid intellectual property rights. As such, Plaintiff is entitled to preliminary and permanent injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully respects that this Court:

(a) preliminarily and permanently enjoin and restrain Defendants and their agents, officers, servants, employees, successors and assigns and all others acting in concert or in privity with Defendants, from directly or indirectly infringing Plaintiff's

rights under federal or state law in his copyrighted material, including, without limitation, reproducing or distributing the infringing work;

(b)  require Defendants to pay, jointly and severally, Plaintiff's actual damages and profits attributable to the infringement pursuant to 17 U.S.C. Section 504(b) and such further damages as permitted by applicable law or the statutory damages for each infringement of the Copyrighted Material pursuant to 17 U.S.C. Section 504(c);

(c)  require Defendants to pay, jointly and severally, Plaintiff's full costs in this action;

(d)  require Defendants to pay, jointly and severally, Plaintiff's reasonable attorney's fees incurred herein, if any; and

(e)  award such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on all issues.

October 07, 2019

Respectfully submitted,

Zoltan Krisko
Plaintiff, *Pro Se*
Address: 2929 NE 40th Street
Fort Lauderdale, FL 33308
E-mail: zoltan.krisko@gmail.com
Tel.:+1 754 999 1919

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## PA 2-087-476

**Effective Date of Registration:**
January 26, 2017

## Title

        Title of Work: LINDA

## Completion/Publication

        Year of Completion: 1983
        Date of 1st Publication: November 02, 1984
        Nation of 1st Publication: Hungary
        International Standard Number: ISRC 80779700

## Author

-         Author: Gyorgy Vukan
        Author Created: soundtrack
        Citizen of: Hungary
        Year Born: 1941
        Year Died: 2013

## Copyright Claimant

        Copyright Claimant: Zoltan Krisko
        Budaorsi ut 4-18/D 1.em 7., Budapest, 1118, Hungary
        Transfer statement: By inheritance

## Certification

        Name: Zoltan Krisko
        Date: January 25, 2017

        Correspondence: Yes

# PARTIES

**Plaintiff:**

**Zoltan Krisko**
2929 NE 40th Street
Fort Lauderdale, FL 33308


**Defendants:**

**1./ Marvel Entertainment, LLC**

Corporate Office:
135 W. 50th Street, 7th Floor
New York, NY 10020

DOS Process:
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543


**2./ Warner Chappell Music, Inc.**

Corporate office:
777 Santa Fe Ave.
Los Angeles, CA 90021

Service of Process:
C T CORPORATION SYSTEM
818 West Seventh St., Suite 930
Los Angeles, CA 90017


**3./ The Walt Disney Company**

Corporate office:
500 S Buena Vista St.,
Burbank, CA 91521,

DOS Process:
CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

**4./ Fox Corporation**

Corporate office:
1211 Avenue of the Americas,
New York, NY 10036

Registered agent:
C T CORPORATION SYSTEM
28 LIBERTY STREET
NEW YORK, NEW YORK, 10005


**5./ Buena Vista Television, LLC**

Corporate office:
500 South Buena Vista Street
Burbank, CA 91521

DOS Process:
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207


**6./ UMG Recording Inc.**

Corporate office:
2220 COLORADO AVENUE
SANTA MONICA CA 90404

DOS Process/Registered Agent:
C T CORPORATION SYSTEM
28 LIBERTY ST.
NEW YORK, NEW YORK, 10005


**7./ Amazon.com, Inc.**

Corporate office:
410 Terry Ave.
N Seattle, WA 98109

Service of process:
Corporation Service Company
300 Deschutes Way SW, Suite 304
Tumwater, WA 98501

**8./ Apple, Inc.**

Corporate office:
1 Infinite Loop Cupertino,
CA 95014

Service of process:
C T CORPORATION SYSTEM
818 West Seventh St., Suite 930
Los Angeles, CA 90017

**9./ Ronald Aaron Wasserman**

774 Via Donte
Newbury Park, CA 91320

**10./ Shuki Levy**

8447 Wilshire Blvd Ste 204
Beverly Hills, CA 90211

**11./ Haim Saban**

10100 Santa Monica Blvd., Ste. 2600
Los Angeles, CA 90067